In the Matter of the Protests of SOUTHWESTERN BELL TELEPHONE COMPANY and Mustang Fuel Corporation alleging illegal sinking fund levies of fiscal year 1979–80 budgets of the City of Oklahoma City and the City of Lawton, Appellees (Protestants Below),

v.

OKLAHOMA COUNTY EXCISE BOARD, and Comanche County Excise Board, Appellees (Respondents Below).

The CITY OF OKLAHOMA CITY, a municipal corporation, and the City of Lawton, a municipal corporation, Appellants (Intervenors Below).

Board of Trustees of the Employee Retirement System of the City of Oklahoma City, a Public Board, Petitioner,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Missouri Corporation, Mustang Fuel Corporation, an Oklahoma Corporation, Oklahoma County Excise Board, a statutory board, the City of Oklahoma City, a municipal corporation, and the State Insurance Fund, a statutory fund, Respondents.

Nos. 54893, 54913.

Supreme Court of Oklahoma.

June 17, 1980.

Rehearing Dismissed Oct. 27, 1980.

William J. Free, Mary R. Whitten, Oklahoma City, for appellee–respondent, Southwestern Bell Tel. Co.

James E. Kifer, Oklahoma City, for appellee–respondent, Mustang Fuel Corp.

Andrew M. Coats, Dist. Atty., and James P. Laurence, Asst. Dist. Atty., Oklahoma City, for appellee–respondent, Oklahoma County Excise Bd.

Robert G. Perrine, Asst. Dist. Atty., Lawton, for appellee–respondent, Comanche County Excise Bd.

Walter M. Powell, Municipal Counselor, Diana L. Davis, Asst. Municipal Counselor, Oklahoma City, for appellant–intervenor, City of Oklahoma City.

Russell D. Bennett, City Atty., Lawton, for appellant–intervenor, City of Lawton.

Robert J. Turner, Oklahoma City, for petitioner, Bd. of Trustees of Emp. Retirement System of City of Oklahoma City.

Sam Hill, Fred Nicholas, Jr., Richard G. Mason, Oklahoma City, for respondent, State Ins. Fund.

Lynn C. Rogers, Asst. Gen. Counsel, Norman, amicus curiae, Oklahoma Ass'n of Municipal Attys.

DOOLIN, Justice:

We are called upon to determine the legality of certain sinking fund levies levied by the cities of Oklahoma City and Lawton for the fiscal year 1979–80 budgets. A determination of that question requires an interpretation of portions of 85 O.S.Supp. 1977, § 149, 62 O.S.1971, § 362, and Article 10, Section 26, of the Oklahoma Constitution. The controversy over the legality of the sinking fund levies comes about in the following manner: Southwestern Bell Telephone Company and Mustang Fuel Corporation officially protested the levies made by the City of Oklahoma City, and the protest was set for a hearing before the Oklahoma Court of Tax Review. The City of Lawton was allowed to intervene in that action. In February of this year, the Court of Tax Review issued its ruling, holding (1) that the sinking fund levies of the City of Oklahoma City, insofar as they would retire certain specific judgments obtained in the District Court of Oklahoma County, were illegal, and (2) that the sinking fund levies of the City of Lawton, insofar as they would retire certain specific judgments rendered in the District Court of Comanche County, were illegal.

Both Oklahoma City and Lawton have appealed from the order of the Tax Commission in Supreme Court Case No. 54,893. Additionally, the Board of Trustees of the Employee Retirement System of the City of Oklahoma City, the purchaser of judgments which Oklahoma City was seeking to retire, has commenced an original action asking this Court to rule upon the validity of portions of 85 O.S.Supp.1977, § 149, under which the judgments the Board purchased came about. This original proceeding was filed as Supreme Court Case No. 54,913.

On motion of the parties, both of these causes were consolidated in this Court, and the parties in the original proceeding were allowed to intervene in the appeal.

As an understanding of the provisions of 85 O.S.Supp.1977, § 149, is essential to a determination of the issues before us, we start with an analysis of that statute.

### I.

In 1977, when the State Legislature revised the Workers Compensation Act, the Legislature required the State, all its departments, municipal corporations, counties, and cities and towns to provide insurance to protect their employees who are injured in the course of their employment. At Section 149 A of Title 85, the Legislature provided that municipal corporations, counties, and cities and towns may insure against a liability for compensation with the State Insurance Fund, or may carry its own insurance. Subsection A of Section 149 reads as follows:

"The state and all departments thereof must insure against their liability for compensation with the State Insurance Fund and every municipal corporation within the state, counties, cities and towns may each insure against their lia-

bility for compensation with the State Insurance Fund, and may not insure with any other insurance carrier unless the State Insurance Fund refuses to accept the risk when the application for insurance is made, but any county, city or town *may carry its own insurance; provided, such municipality may make any appropriation of funds to take care of such claims.*" (Emphasis supplied).

Subsection B of Section 149 provides that governmental organizations which are either self–insured, *or have secured insurance coverage with the State Insurance Fund,* may by resolution of its governing body, make payments of such insurance premiums. Alternatively, that subsection provides if the premiums due the State Insurance Fund are not paid, the Fund may obtain a lien against the governmental organization for the amount due, together with interest and penalty. Subsection B reads:

"Any governmental organization, including its instrumentalities, which is permitted to self–insure under the provisions of this section and which is carrying workers' compensation insurance with the State Insurance Fund may, by resolution of its governing body, make payments for such insurance premiums after receipt of the notice of the full amount due. If such amount of premiums dues is not paid to the State Insurance Fund by such governmental organization by the due date, the State Insurance Fund may file in the office of the court clerk of the county in which the situs of the governmental organization is located a certified copy of its notice of the full amount due, regardless of any minimum, and includ-

ing any interest or penalty that may be assessed which shall become a lien against the governmental organization."

Subsection C of Section 149 of Title 85 provides the lien asserted against a governmental organization may be reduced to judgment and paid in the manner provided for payment of judgments as set forth in Sections 365.1 through 365.5 of Title 62.[1]

Subsection D of Section 149 of Title 85 merely provides the State Insurance Fund is authorized to sell and assign any judgments obtained under the authority of the prior subsections of Section 149.

The last subsection of Section 149 of Title 85, subsection E, provides if the procedure for obtaining reimbursement of the premiums in subsection B of Section 149 is found to be unconstitutional or unenforceable as to governmental organizations authorized to raise revenue as provided in Article 10, Section 28, of the Oklahoma Constitution, then such reimbursing organization shall be required to post bond for the payment of such premiums.

The Protestants, Southwestern Bell Telephone and Mustang Fuel, argue subsections B and C of 85 O.S. (Supp.1977), § 149, are violative of the provisions of Article 10, Section 26, of the Oklahoma Constitution, unless the provisions of Title 62 O.S.1971, § 362, apply to judgments rendered against municipalities, cities and towns under the provisions of Section 149 of Title 85. Section 362 of Title 62 provides before final judgment in any suit *based on contract* shall be rendered against a municipality, certain proof must be filed with the court, including a statement of the appropriations against which each claim accrued.[2]

1. Subsection C reads:

   "The amount of the lien so certified may be reduced to judgment and entered on the judgment docket of the district court and paid in the manner provided for payment of judgments against subdivisions of government as set forth in Sections 365.1 through 365.5 of Title 62 of the Oklahoma Statutes."

2. Title 62 O.S.1971, § 362, reads:

   "Proof as to indebtedness before judgment—Appeals

   "Before final judgment in any suit based on contract shall be rendered against any municipality by any court of any county in the State of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:

In short, Southwestern Bell and Mustang Fuel argue that judgment based upon the nonpayment of insurance premiums due the State Insurance Fund may not be rendered unless the State Insurance Fund proves that the municipality has appropriated funds to pay the premiums.

■■■ In examining the provisions of 85 O.S.Supp.1977, § 149, we conclude it was the intent of the Legislature *not to require* governmental entities to appropriate funds for the payment of premiums to the State Insurance Fund, though such appropriations *may* be made. In so holding, we note that the last provision of subsection A of Section 149 specifically provides that:

"... such municipality *may* make any appropriation of funds to take care of such claims."

The Legislature's use of the word "may" is a clear indication it was not its intent to require governmental agencies to appropriate funds with which to pay the premiums due the State Insurance Fund. This being the case, we hold that the general provisions of 62 O.S.1971, § 362, are not applicable to judgments rendered under the provisions of 85 O.S.Supp.1977, § 149, as the specific provisions of 85 O.S. § 149, rather than the general provisions of Title 62, are controlling, for it is a long–standing rule of construction in this jurisdiction that where there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes different rules and procedures from those in a general statute, the special statute and not the general statute applies.[3]

## II.

Having ruled it was the intent of the Legislature that judgments rendered under the provisions of 85 O.S.Supp.1977, § 149, may be rendered without proving that the city appropriated funds to pay for the premium debt underlying the judgment, we must now determine whether such judgments not supported by appropriations violate the provisions of Article 10, Section 26, of the Oklahoma Constitution.

Article 10, Section 26, of the Oklahoma Constitution, provides in part:

"*Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three–fifths of the voters thereof, ...*" (Emphasis supplied).

A related section of the Constitution, Article 10, Section 28, requires counties, townships, school districts, cities and towns to levy sufficient additional revenue to create

"1. An itemized statement of the bonded indebtedness of said municipality.

"2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

"3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:

"(a.) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;

"(b.) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of 'estimated income'; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;

"(c.) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application.

"Appeals from the judgment of the court shall be allowed as provided by law, upon the giving of a bond for cost and damages in such sum as the court shall require; provided, that the county attorney of any county may, without the consent of the board of county commissioners of said county, take an appeal from said judgment on behalf of said county and without bond for costs and damages."

3. E. g., *Matter of Suntide Inn Motel*, Okl., 563 P.2d 125 (1977); and *Oklahoma Natural Gas Co. v. McFarland*, 143 Okl. 252, 288 P. 468 (1930).

a sinking fund to be used to pay, among other things, judgments. That section provides:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; *third, for the payment of such part of judgments as such municipality may, by law, be required to pay.*" (Emphasis supplied).

■ The question before us is whether sinking fund levies can be made in order to retire judgments against a municipality and in favor of the State Insurance Fund, obtained by following the procedures for collecting past due Workmen's Compensation premiums outlined in 85 O.S.Supp.1977, § 149, subsections B and C. We hold such levies violate the provisions of Article 10, Section 26, of the Oklahoma Constitution, which require municipalities to operate on a "cash basis."

The Appellant Cities argue the provisions of Article 10, Section 26, are not applicable, because the obligation to provide Workmen's Compensation coverage is a mandatory obligation. In making this argument, the Appellant Cities rely upon *Smartt v. Board of County Com'rs of Craig County,* 67 Okl. 141, 169 P. 1101 (1917). In that case, Sheriff Smartt of Craig County brought an action against the Board of County Commissioners to recover a judgment on claims against the County for the payment of prisoners' board. The Commissioners had refused the claims on the grounds the revenue provided for such purposes for the fiscal year, during which the claims arose, had been exhausted prior to the accrual or presentment of claims. In reversing the trial court, which ruled in favor of the County Commissioners, we held that Article 10, Section 26, does not apply to liabilities arising out of the performance of obligations imposed upon municipalities by the superior power of the sovereign, expressed either in the Constitution or by valid acts of the Legislature. In so ruling,

we stated, "The items claimed were earned by the plaintiff in the performance of duties imposed upon him by the State in which he had no discretion, and were not included within the limitations of Article 10, Section 26."

Reasoning by analogy, the Appellant Cities argue that as the Legislature has mandated they provide Worker's Compensation protection for their employees, the liabilities incurred in providing such coverage do not come within the limitations of Article 10, Section 26, of this State's Constitution. Prior case law, almost directly on point, points out the vice in Appellants' argument.

In *State Insurance Fund v. Board of Com'rs of Creek County,* 195 Okl. 66, 155 P.2d 542 (1945), we clarified our holding in *Smartt, supra.* In the *Creek County case,* the State Insurance Fund had filed a petition seeking to recover against the County Commissioners of Creek County premiums due the Fund by virtue of insurance policies issued under 85 O.S.1941, § 149, under which the Fund provided Workmen's Compensation insurance for County employees. The trial court sustained a demurrer to the petition, partly upon the grounds that the petition did not allege there were funds on hand constituting a fund out of which said premiums could be legally paid. As in the case before us, the Fund's right to a judgment was predicated upon our ruling in *Smartt, supra.* In holding that the State Insurance Fund was *not* entitled to judgment, this Court, in analyzing the rule in *Smartt,* stated:

"It may be seen therefore that the basis of the rule (the rule in *Smartt*) is that the *plaintiff* who seeks to recover must be under a constitutional or mandatory obligation to perform the services for which recovery is sought. It is argued by the plaintiff that 85 O.S.1941 § 149 makes it mandatory for the county to purchase workmen's compensation insurance contracts from the State Insurance Fund. The defendant counters by stating that such provision is unconstitutional as granting a special privilege and not bind-

ing upon the county. We do not deem it necessary to enter into a legal discussion of this question. *The county is not seeking to recover any expenses incurred by reason of compliance with 85 O.S.1941 § 149. There was no obligation on the State Insurance Fund to furnish any contract to the defendant until the funds had been set up* as provided by law, by the proper authorities, for the payment of any premiums for any insurance contract negotiated by the county authorities and the State Insurance Fund.

"In any event *there is no obligation, statutory or constitutional, placed upon the State Insurance Fund to perform any duties or to enter into any contracts which would bring it within the decision of this court in Smartt v. Board of County Commissioners, supra . . .*" (Emphasis supplied).

Today, as in 1945, the State Insurance Fund is under no obligation to furnish Workmen's Compensation insurance to municipalities. In point of fact, the provisions of 85 O.S.Supp.1977, § 149 A, recognize the State Insurance Fund may refuse to accept applications for insurance made by cities, towns, counties, and municipalities. Thus, the plaintiff, the State Insurance Fund, in the cases brought against the Cities, was under no mandatory obligation to provide services for which they made claim. This being so, the limitations of Article 10, Section 26, were applicable. Thus, it was necessary for the State Insurance Fund to allege and prove there were funds on hand out of which the claims made against the Cities could be paid. The Fund's failure to do so was fatal, and we hold the judgments entered against the Cities, based on the Fund's claims, are not properly satisfied through a sinking fund levy.

For the above stated reasons, we affirm the Court of Tax Review's ruling that the sinking fund levies involved were not proper. In so holding, we would note that both Cities, in preparing their budgets and making their appropriations, and in deciding to allow Workmen's Compensation premiums to be paid in accordance with

procedures set forth in 85 O.S.Supp.1977, § 149, acted in good faith reliance upon the statute. Similarly, the State Insurance Fund reduced its claims to judgment, in good faith. Likewise, the Employee Retirement System of the City of Oklahoma City purchased the judgments in good faith, and in reliance upon the statute. All the actions taken by the Cities, the Fund, and the Trustees of the Employee Retirement System were made in good faith, and in reliance upon the statute. This being the case, we hold our decision today is to have prospective effect, that is, our ruling today will apply only to judgments in favor of the State Insurance Fund based upon delinquent premiums secured *after* the effective date of this opinion. Thus, the judgments before us may be satisfied through sinking fund levies.

As the issues addressed are dispositive of the cases before us, we deem it unnecessary to consider other issues raised in this Court.

THE RULING OF THE COURT OF TAX REVIEW AFFIRMED AND APPLIED PROSPECTIVELY.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, SIMMS, HARGRAVE and OPALA, JJ., concur.