Dear Chair Strebel:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May multiple wagers, including Trifecta, Pick 3, Superfecta and Twin Trifecta wagers, be accepted by a fair association that, under the provisions of 3A O.S. Supp. 1999, § 208.2[3A-208.2], is granted an organization license by the Oklahoma Horse Racing Commission?
 2. If a fair association issued an organization license under the provisions of 3A O.S. Supp. 1999, § 208.2[3A-208.2], may accept multiple wagers such as Trifecta, Pick 3, Superfecta and Twin Trifecta wagers, does the tax exemption provided fair associations by Section 208.2 extend to these multiple wagers?
 3. Does the tax exemption afforded fair associations by 3A O.S. Supp. 1999, § 208.2[3A-208.2] extend to payments required by the provisions of 3A O.S. Supp. 1999, § 205.6[3A-205.6], to be made to the Oklahoma Breeding Development Fund Special Account?
 I. Fair Association's Ability to Accept Multiple Wagers, Such as Trifecta, Pick 3, Superfecta and Twin Trifecta Wagers. A. General Provisions on Applications to Conduct Race Meetings
¶ 1 In your first question you ask whether a fair association, granted an organization license by the Oklahoma Horse Racing Commission ("Commission"), may accept Trifecta, Pick 3, Superfecta and Twin Trifecta wagers. Under the provisions of the Oklahoma Horse Racing Act ("Act") (3A O.S. 1991 and Supp. 1999,§§ 200-209), "[a]ny person desiring to conduct a race meeting may apply to the [Oklahoma Horse Racing] Commission for an organization license." 3A O.S. 1991, § 205.1[3A-205.1](A). Section 205.1(B) requires that "[a] separate application shall be filed for each race meeting which such person proposes to conduct."Id. (emphasis added). The Act defines "person" as "any individual, partnership, corporation, or other association or entity." Id. § 200.1(12) (emphasis added).
¶ 2 The Act defines the term "race meeting" to mean:
 [T]he entire period of time not to exceed twenty (20) calendar days separating any race days for which an organization license has been granted to a person by the Commission to hold horse races at which the pari-mutuel system of wagering is conducted, to hold non-pari-mutuel horse races or to conduct accredited work or training races.
Id. § 200.1(13) (emphasis added).
 B. Specific Limitations on Race Meetings Conducted by Fair Associations
¶ 3 The Legislature at 3A O.S. Supp. 1999, § 208.2[3A-208.2] enacted a specific provision addressing the licensing of fair associations organized under the provisions of Title 2 of the Oklahoma Statutes. Section 208.2 not only places limits on fair associations' race meetings, it also enhances the profits of fair associations by exempting fair associations from some taxes. Section 208.2(A) limits: 1) the number of race meetings that a fair association may conduct; 2) the number of race days in a fair association's race meeting; and 3) the length of the time period in which such a race meeting can be conducted. It also provides that fair association race meetings shall be conducted so that all profits accrue to the fair association:
 A. Any fair association organized pursuant to the provisions of Title 2 of the Oklahoma Statutes for Agricultural Fair Corporations, the Free Oklahoma State Fair, Free District Fairs, and Agricultural and Industrial Expositions and Fairs or any existing county, district, or state fair as of January 1, 1983, may apply to the Commission for one race meeting each year to be held within the boundaries of the county where the fair association is located. The Commission may set the number of days and the dates of such race meeting requested by the fair association. A race meeting conducted by a fair association shall not exceed sixteen (16) days during a twenty-eight-consecutive-day period. A race meeting conducted pursuant to the provisions of this section shall be conducted in such a manner that all profits shall accrue to the fair association.
Id. (emphasis added).
 C. Tax Exemptions Granted Fair Associations
¶ 4 In designating the amounts to be retained from wagers at race meetings conducted by fair associations, 3A O.S. Supp.1999, § 208.2[3A-208.2](B) provides an exemption from taxation as follows:
 B. Each organization licensee that, pursuant to this section, holds a race meeting at which the pari-mutuel system of wagering is conducted shall retain the following amounts from the monies wagered:
 1. On win, place, and show wagers, an amount equal to eighteen percent (18%) shall be retained and distributed as follows:
 a. two-thirds (2/3) of the eighteen percent (18%) to the organization licensee, and
 b. one-third (1/3) of the eighteen percent (18%) to purses for participating horses;
 2. On daily double, quinella, and exacta wagers, an amount equal to twenty percent (20%) shall be retained and distributed as follows:
 a. seven-tenths (7/10) of the twenty percent (20%) to the organization licensee, and
 b. three-tenths (3/10) of the twenty percent (20%) to purses for participating horses;
 3. On pick six wagers, an amount equal to twenty-five percent (25%) shall be retained and distributed as follows:
 a. three-fifths (3/5) of the twenty-five percent (25%) to the organization licensee, and
 b. two-fifths (2/5) of the twenty-five percent (25%) to purses for participating horses.
Id. (emphasis added).
¶ 5 Under Section 208.2(B) none of the funds retained by fair associations on the enumerated wagers are required to be paid to the State Tax Commission. Under the general statute, Section 205.6(B), licensees are required to pay varying portions of the retained funds to the Tax Commission. See id. The more specific fair association statute thus grants fair association licensees a tax exemption. See id. § 208.2. The extent of that exemption is discussed in Part II of this Opinion.
 D. General Multiple Wager Provisions
¶ 6 As noted above, a "race meeting" is the period of time in which a person granted an organization license by the Horse Racing Commission is to hold horse races "at which the pari-mutuel system of wagering is conducted." 3A O.S. Supp.1999, § 200.1[3A-200.1].(13). As defined by the Act, the "pari-mutuel system of wagering" means:
 [A] form of wagering on the outcome of horse races in which those who wager purchase tickets of various denominations on a horse or horses and all wagers for each race are pooled and held by the organization licensee for distribution. The pari-mutuel system of wagering uses an electric totalizator or similar equipment which automatically registers the wagers made on each horse and prints and issues a ticket representing each wager[.]
Id. § 200.1(10) (emphasis added).
¶ 7 In its definition of "pari-mutuel pool" the Act further provides for separate pari-mutuel pools not only for win, place and show wagers, but "for each multiple combination of betting approved by the Oklahoma Horse Racing Commission." Id. § 200.1(11). The Act defines "pari-mutuel pool" to mean:
 [T]he total money wagered by individuals on any horse or horses in a particular horse race to win, place, or show and held by the organization licensee pursuant to the pari-mutuel system of wagering. There is a separate pari-mutuel pool for win, for place, for show, and for each multiple combination of betting approved by the Oklahoma Horse Racing Commission[.]
Id. (emphasis added).
¶ 8 The "multiple combinations of betting" referred to in this definition may take one of three forms:
1. wagers on multiple horses in a single race,
2. wagers on horses in multiple races, or
3. wagers on multiple horses in multiple races.
 E. Ability of Fair Associations to Accept All Approved Multiple Wagers
¶ 9 You ask about four specific types of multiple wagers, all of which the Commission's rules permit: the Trifecta, Pick 3, Superfecta and Twin Trifecta.
¶ 10 Both the Trifecta and Superfecta wagers are wagers on multiple horses in a single race. The Trifecta requires the selection of "the first three finishers, in their exact order, for a single contest," (OAC 325:65-9-12 (1997)), and the Superfecta requires the selection of the "first four finishers, in their exact order, for a single contest." OAC 325:65-9-13
(1997).
¶ 11 The Pick 3 is a "Pick (n) Wager"; it is a multiple race wager which requires the selection of "the first place finisher in each of a designated number of contests." OAC 325:65-9-7
(1998). In a Pick 3 wager the designated number of contests is three contests. Thus, in a Pick 3 wager a successful bettor must select the first place finishers in each of three designated races.
¶ 12 The Twin Trifecta wager is a multiple horse, multiple race wager which requires the selection of "the first three finishers, in their exact order, in each of two designated contests." OAC325:65-9-15 (1997). In the above-referenced Rules in the Oklahoma Administrative Code (OAC), the Commission permits such multiple wagers. Organization licensees that comply with other rules on multiple wagers may thus accept such wagers under the authority of the license issued to them by the Commission.
¶ 13 While the specific statute dealing with organization licenses issued to fair associations establishes various limits on the race meetings conducted by fair associations, the statute does not establish a limit on the types of wagers which a fair association may accept. That statute (3A O.S. Supp. 1999, §208.2[3A-208.2]), as discussed above limits: 1) the number of race meetings which a fair association licensee may conduct to one race meeting a year; 2) the number of race days in that race meeting to sixteen (16) days; and 3) the time period in which the race meeting may be conducted to twenty-eight (28) consecutive days. See id. The statute, however, does not place a limit on the type of wagers that a fair association licensee may accept.See id. While as discussed below, in Part II of this Opinion, the tax exemption afforded fair association licensees does not cover all taxes imposed under the Act; the decision of the Legislature not to extend the tax exemption to all forms of wagers does not establish a limit on the types of wagers that may be accepted. Accordingly, we conclude that a fair association, which under the provisions of Section 208.2 is granted an organization license to conduct a race meeting at which the pari-mutuel system of wagering may be conducted, may accept any multiple wagers approved by the Commission, including Trifecta, Pick 3, Superfecta and Twin Trifecta wagers.
 II. Extent of Tax Exemption Afforded Fair Associations By Section 208.2 of the Oklahoma Horse Racing Act A. Legal Principal That Tax Exemption Laws Are Strictly Construed Against Exemption and Past Application of That Principal to Fair Association Tax Exemptions
¶ 14 You next ask whether the tax exemption afforded fair associations granted an organization license under the provisions of Section § 208.2 extends to multiple wagers, including Trifecta, Pick 3, Superfecta and Twin Trifecta wagers.
¶ 15 As Oklahoma courts have held on numerous occasions, tax exemption statutes are strictly construed against exemption. For example, in Phillips Petroleum Co. v. Oklahoma Tax Commission,542 P.2d 1303 (Okla. 1975), the Oklahoma Supreme Court commented on the interplay between the general rules of statutory construction that tax laws should be resolved in favor of the taxpayer, and the rule of construction that tax exemption statutes are to be strictly construed against the person asserting the exemption. The Court held that the rule of construction that an ambiguity in the tax law should be resolved in favor of the taxpayer does not apply where a statute is claimed to exempt property from taxation because tax exemption statutes are construed against exemption:
 Appellant further contends that if there is any ambiguity in a tax law, it should be resolved in favor of the taxpayer. That rule does not apply here where the statute is claimed to exempt property from taxation. See Dairy Queen of Oklahoma v. Oklahoma Tax Commission, 205 Okl. 473, 238 P.2d 800 (1952); Magnolia Petroleum Co. v. Oklahoma Tax Commission, 326 P.2d 821 (Okl. 1958); and Forston v. Heisler, 363 P.2d 949 (Okl. 1961), where the rule is set out that a tax exemption statute is to be strictly construed against exemption.
Id. at 1305 (emphasis added).
¶ 16 In Attorney General Opinion 95-101, we concluded that the tax exemption afforded fair associations by 3A O.S. Supp. 1995,§ 208.2[3A-208.2](B) "does not exempt from taxation inter-track, simulcast wagering placed at such facility when no fair meet is being conducted." Id. The conclusion reached in that Opinion was affirmed by the Oklahoma Court of Appeals. See Tulsa County Pub.Facilities Auth. v. State ex rel. Oklahoma Tax Comm'n,955 P.2d 741, 743 (Okla.Ct.App. 1997). Today we are asked whether that exemption extends to multiple wagers such as the Trifecta, Pick 3, Superfecta and Twin Trifecta wager.
 B. 1983 Establishment of Fair Associations' Tax Exemptions Shows That Exemptions The Were Not Intended to Apply to All Taxes
¶ 17 The provisions of Section 208.2 of the Act specifically dealing with fair association licenses were not part of the original Act, but were added in 1983. See 1983 Okla. Sess. Laws ch. 11, § 28 (codified at 3A O.S. Supp. 1983, § 208.2[3A-208.2]). A reading of Chapter 11 of the 1983 Oklahoma Session Laws demonstrates that it was not the Legislature's intent, in enacting Section 208.2, to exempt fair associations from all taxes. As originally enacted, Section 208.2 only exempted fair associations from the provisions of a specific Section in the Act:
 Any fair association organized pursuant to the provisions of Title 2 of the Oklahoma Statutes for Agricultural Fair Corporations, the Free Oklahoma State Fair, Free District Fairs, and Agricultural and Industrial Expositions Fairs or any existing county, district or state fair as of January 1, 1983, may apply to the Commission for one race meeting each year to be held within the boundaries of the county where the fair association is located on specified dates which coincide with the dates of the fair sponsored by the fair association not to exceed fourteen (14) days. The Commission may set the number of days and the dates of such race meeting. A race meeting conducted pursuant to the provisions of this section shall be conducted in such a manner that all profits shall accrue to the fair association.
The profits shall not exceed eighteen percent (18%) of the total amount of moneys wagered. All race meetings conducted by fair associations pursuant to the provisions of this section shall be exempt from the provisions of paragraph 1 of subsection B of Section 23 of the Oklahoma Horse Racing Act.
Id. (emphasis added).
¶ 18 Paragraph 1 of Subsection B of Section 23 referred to above is Section 23 of Chapter 11 of the 1983 Oklahoma Session Laws. That paragraph — the paragraph to which the exemption applied — was the general provision that required that one-third (1/3) of the percentage retained from each wager be remitted to the Oklahoma Tax Commission. In pertinent part, that provision read:
 A new section of law to be codified in the Oklahoma Statutes as Section 205.6 of Title 3A, unless there is created a duplication in numbering, reads as follows:
. . . .
 B. Each organization licensee that holds a race meeting at which the pari-mutuel system of wagering is conducted shall retain an amount equal to eighteen percent (18%) of all money wagered, to be distributed as follows:
 1. One-third (1/3) of the eighteen percent (18%) shall be remitted to the Oklahoma Tax Commission on the first business day following the close of the racing day on which it was assessed.
Id. (emphasis added).
¶ 19 The exemption provided to fair associations only applied to the one-third (1/3) of the eighteen percent (18%) that was retained from each wager. That the exemption was not to apply to other taxes is made clear, not only by the limiting language in the exemption itself, but also by the fact that Chapter 11 of the 1983 Session Laws also contained provisions for other taxes imposed upon organization licensees which were not addressed in the exemption. For example, Section 25 of Chapter 11 of the 1983 Session Laws established a ten percent (10%) tax on admission tickets. In pertinent part Section 25 provided:
 (a) A Each organization licensee shall collect a
tax of ten percent (10%) of the amount received by any the organization licensee on for tickets for admission to the race meeting grounds where such horse races or meetings are held or conducted. All taxes levied herein on admission tickets shall be paid to the city. On the first business day after the close of the racing day on which the tax was collected, the organization licensee shall remit to the Oklahoma Tax Commission the proceeds from the tax.
Id.
¶ 20 The tax exemption granted fair associations did not include an exemption from this tax — a tax imposed in the same bill which granted the exemption. The intent of the Legislature was thus not to exempt fair associations from all taxes.
 C. 1990 Expansion of Fair Associations' Tax Exemption to Include Daily Double, Quinella, Exacta and Pick Six Wagers
¶ 21 In 1990, the Legislature amended the tax exemption in Section 208.2. The amendment replaced the reference to Section 23 of the Act with an enumeration of wagers. In doing so, the Legislature retained the language that provided that "all profits shall accrue to the fair association." 1990 Okla. Sess. Laws ch. 162, § 1 (codified at 3A O.S. Supp. 1990, § 208.2[3A-208.2]). The 1990 amendment to Section 208.2 read in pertinent part as follows:
 A race meeting conducted pursuant to the provisions of this section shall be conducted in such a manner that all profits shall accrue to the fair association. The profits shall not exceed eighteen percent (18%) of the total amount of moneys wagered. All race meetings conducted by fair associations pursuant to the provisions of this section shall be exempt from the provisions of paragraph 1 of subsection B of Section 23 of the Oklahoma Horse Racing Act.
 B. Each organization licensee that, pursuant to this section, holds a race meeting at which the pari-mutuel system of wagering is conducted shall retain the following amounts from the monies wagered:
 1. On win, place, and show wagers, an amount equal to eighteen percent (18%) shall be retained and distributed as follows:
 a. two-thirds (2/3) of the eighteen percent (18%) to the organization licensee, and
 b. one-third (1/3) of the eighteen percent (18%) to purses for participating horses;
 2. On daily double, quinella, and exacta wagers, an amount equal to twenty percent (20%) shall be retained and distributed as follows:
 a. seven-tenths (7/10) of the twenty percent (20%) to the organization licensee, and
 b. three-tenths (3/10) of the twenty percent (20%) to purses for participating horses;
 3. On pick six wagers, an amount equal to twenty-five percent (25%) shall be retained and distributed as follows:
 a. three-fifths (3/5) of the twenty-five percent (25%) to the organization licensee, and
 b. two-fifths (2/5) of the twenty-five percent (25%) to purses for participating horses.
Id. (bold emphasis added).
¶ 22 This change in the tax exemption afforded fair associations exemptions from the additional tax paid on daily double, quinella, exacta and pick six wagers. The distribution that fair associations make under this specific statute does not include the payment of taxes, whereas under the general distribution statute (Section 205.6), non-fair association licensees must distribute part of the retainage on those wagers to the state as taxes.
¶ 23 These changes extended the scope of the tax exemption afforded fair associations to include the multiple wagers addressed in the amendments made to the general wagering tax provision, Section 205.6, in 1985 and 1986. In 1985, the Legislature amended the general wagering tax provision, Section 205.6, to require an additional retention of two percent (2%) for daily double, quinella, exacta and pick six wagers:
 D. In addition to the amount required to be retained by the provisions of subsection B of this section, each organization licensee holding a race meeting at which the pari-mutuel system of wagering is conducted shall retain an additional amount equal to two percent (2%) of all money wagered on a daily double, quinella, or exacta. The revenue derived from the provisions of this subsection shall be paid monthly to the State Treasurer to be deposited to the credit of the Oklahoma Horse Racing Commission Revolving Fund.
1985 Okla. Sess. Laws ch. 52, § 1 (codified at 3A O.S. Supp.1985, § 205.6[3A-205.6]) (bold emphasis added).
¶ 24 Note that the additional two percent (2%) retainage, which brought the total retainage to twenty percent (20%), was not paid to the Oklahoma Tax Commission, but rather to the Oklahoma Horse Racing Commission Revolving Fund. In 1986, the Legislature once again amended the general taxing provision, Section 205.6. In pertinent part, those changes made the additional two percent (2%) retained on daily double, quinella and exacta wagers payable not to the Oklahoma Horse Racing Commission Revolving Fund, but to the General Revenue Fund of the State Treasury. Additionally, the 1986 amendments required that twenty-five percent (25%) of all monies wagered on pick six wagers be retained, with a substantial portion of that retention going to the Oklahoma Tax Commission:
 D. In addition to the amount required to be retained by the provisions of subsection B of this section, each organization licensee holding a race meeting at which the pari-mutuel system of wagering is conducted shall retain an additional amount equal to two percent (2%) of all money wagered on a daily double, quinella, or exacta. The revenue derived from the provisions of this subsection shall be paid monthly to the State Treasurer to be deposited to the credit of the Oklahoma Horse Racing Commission Revolving Fund General Revenue Fund of the State Treasury.
 E. Each organization licensee shall retain an amount equal to twenty-five percent (25%) of all money wagered on pick six wagers, to be distributed as follows:
 1. Seven twenty-fifths (7/25) of the twenty-five percent (25%) shall be remitted to the Oklahoma Tax Commission on the first business day following the close of the racing day on which it was assessed. The revenue shall be apportioned monthly to the General Revenue Fund of the state for the support of the state government, to be paid out only pursuant to appropriation by the Legislature.
1986 Okla. Sess. Laws ch. 223, § 14 (codified at 3A O.s. Supp. 1986, § 205.6) (bold emphasis added).
¶ 25 In sum, the effect of the 1990 amendment to Section 208.2 was to expand the scope of the tax exemption afforded fair associations by adding exemptions from the taxes paid on daily doubles, quinellas, exacta and pick six wagers.
 D. 1992 Expansion of Permitted Multiple Wagers
¶ 26 In 1992, the Legislature both amended the Act's definition of "pari-mutuel pool" and replaced the laundry list of permitted multiple wagers — which then included only daily double, quinella, exacta, pick six and the National Breeders' Cup pick seven wagers — with a general reference to multiple combinations of betting approved by the Commission. The Legislature also amended the general wagering tax provision, Section 205.6, to establish a different scheme of taxation on multiple wagers. The 1992 amendment to the Act's definition of "pari-mutuel pool" read:
 "Pari-mutuel pool" means the total money wagered by individuals on any horse or horses in a particular horse race to win, place, or show and held by the organization licensee pursuant to the pari-mutuel system of wagering. There is a separate pari-mutuel pool for win, for place, and for show, and for each of the other forms multiple combination of betting provided for approved by the rules and regulations of the Oklahoma Horse Racing
Commission, including only the daily double, the quinella, the exacta, the pick six and the National Breeders' Cup pick seven[.]
1992 Okla. Sess. Laws ch. 364, § 14(11) (amending 3A O.S. 1991,§ 200.1[3A-200.1](11)).
¶ 27 The 1992 amendments to the general wagering tax provision (Section 205.6) replaced the references to the daily double, quinella, exacta and pick six wager with general categories of multiple wagering. The first category included multiple race wagers involving no more than three races and multiple horse wagers in the same race category:
 D. In addition to the amount required to be retained by the provisions of subsection B of this section, each organization licensee holding a race meeting at which the pari-mutuel system of wagering is conducted shall retain an additional amount equal to two percent (2%) of all money wagered on a daily double, quinella, or exacta multiple race wagers involving not to exceed three races and on multiple horse wagers in the same race.
 1. Until July 1, 1995, such amount shall be retained by the organization licensee to be distributed as follows:
 a. Seventy-five percent (75%) as purses for participating horses, and
 b. Twenty-five percent (25%) shall be remitted to the Commission, at such intervals or [sic] required by the Commission, for deposit in the Oklahoma Breeding Development Fund Special Account.
1992 Okla. Sess. Laws ch. 364, § 15 (codified at 3A O.S. Supp.1992, § 205.6[3A-205.6]) (bold emphasis added).
¶ 28 The second category of multiple wagers established in the 1992 amendment required a retainage equal to twenty-five percent (25%) on all multiple wagers involving more than three races in subsection E of Section 208.6:
 E. 1. Until July 1, 1995, each organization licensee shall retain an amount equal to twenty-five percent (25%) of all money wagered on pick six wagers multiple race wagers involving more than three races, to be distributed as follows:
 a. Two twenty-fifths (2/25) of the twenty-five percent (25%) shall be remitted to the Oklahoma Tax Commission on the first business day following the close of the racing day on which it was assessed. The revenue shall be apportioned monthly to the General Revenue Fund of the state for the support of the state government, to be paid out only pursuant to appropriation by the Legislature; and
 b. Two-fifths (2/5) of the twenty-five percent (25%) shall be retained by the organization licensee; and
 c. Eight twenty-fifths (8/25) of the twenty-five percent (25%) shall be retained by the organization licensee to be distributed as purses for participating horses; and
 d. One-fifth (1/5) of the twenty-five percent (25%) shall be retained by the organization licensee to be distributed as follows:
 (1) Seventy-five percent (75%) as purses for participating horses; and
 (2) Twenty-five percent (25%) shall be remitted to the Commission, at such intervals as required by the Commission, for deposit in the Oklahoma Breeding Development Fund Special Account.
1992 Okla. Sess. Laws ch. 364, § 15 (codified at 3A O.S. Supp.1992, § 205.6[3A-205.6]) (bold emphasis added).
¶ 29 As we shall see, since enacting these new taxes on multiple wagers, the Legislature has not amended the fair association section (Section 208.2) to expand the fair associations' tax exemption to include these newer taxes on multiple wagers.
 E. Amendments to the Specific Fair Association Law Since the 1992 Expansion of Permitted Multiple Wagers Have Not Expanded the Fair Associations' Tax Exemptions to Include all Permitted Multiple Wagers
¶ 30 Since the 1992 amendments to the general wagering tax provisions, the Legislature has on two occasions amended Section 208.2, which deals specifically with fair association licenses. In both instances, the Legislature amended subsection A of Section 208.2, dealing with the dates on which race meetings of fair associations could be conducted. See 1994 Okla. Sess. Laws ch. 83, § 2(A) (codified at 3A O.S. Supp. 1994, § 208.2[3A-208.2](A)); 1995 Okla. Sess. Laws ch. 125, § 4 (codified at 3A O.S. Supp.1995, § 208.2[3A-208.2](A)). In neither amendment of Section 208.2 did the Legislature amend the tax exemption afforded fair associations to encompass the new multiple wager taxing scheme.
¶ 31 Because, as noted above, tax exemptions are strictly construed against the taxpayer, we conclude that the tax exemptions afforded fair associations do not extend to multiple wagers not specifically enumerated in Section 208.2. We thus conclude that in addition to covering win, place and show wagers, the tax exemption afforded fair associations in Section 208.2 of Title 3A extends only to the multiple wagers enumerated in the Section: the daily double, the quinella, the exacta, and the pick six wagers. Accordingly, the exemptions do not extend to other multiple wagers, such as the Trifecta, Pick Three, Superfecta or Twin Trifecta wagers.
 III. Fair Association Licensees' Obligation to Make Payments to The Oklahoma Breeding Development Fund Special Account Under the Provisions of 3A O.S. Supp. 1999, § 205.6[3A-205.6] A. Creation of the Oklahoma Breeding Development Fund Special Account
¶ 32 Finally, you ask whether the exemption afforded fair associations by 3A O.S. Supp. 1999, § 208.2[3A-208.2] extends to payments required to be made to the Oklahoma Breeding Development Fund Special Account under the provisions of Section 205.6.
¶ 33 The Legislature at Section 208.3 created the Oklahoma Breeding Development Fund Special Account. By definition, that fund consists in part of all monies paid to the Commission for deposit therein under the general wagering taxes provisions. Seeid. § 205.6. In pertinent part, Section 208.3 provides:
 A. There is hereby created in the State Treasury an agency special account for the Oklahoma Horse Racing Commission, to be designated the "Oklahoma Breeding Development Fund Special Account". The fund shall be a continuing fund, not subject to fiscal year limitations, and shall consist of all monies received by the Commission for deposit in the fund pursuant to Section 205.6 of this title and from revenue received as breakage and from unclaimed pari-mutuel tickets. All monies accruing to the credit of said fund are hereby appropriated and may be budgeted and expended by the Commission for the purposes specified in subsection B of this section.
Id. (emphasis added).
 B. Payments to the Oklahoma Breeding Development Fund Special Account From the General 18% Retainage Do Not Apply to Wagers Excepted by Fair Associations During Their Race Meetings
¶ 34 The general provision establishing the amounts to be retained from wagers placed at organizational licensee facilities is, as discussed above, Section 205.6. Subsection B of Section 205.6 establishes how the general eighteen percent (18%) retainage is to be distributed. In doing so, that subsection establishes different distribution formulas based on the total amount wagered per calendar year for each type of racing. The three categories are: 1) the first One Hundred Million Dollars ($100,000,000) of wagering; 2) wagers in excess of One Hundred Million Dollars ($100,000,000), but not more than One Hundred Fifty Million Dollars ($150,000,000); and 3) wagers in excess of One Hundred Fifty Million Dollars ($150,000,000).
¶ 35 In the second category, a portion of one-ninth (1/9) of the general eighteen percent (18%) retainage is paid to the Oklahoma Breeding Development Fund Special Account:
 d. One-ninth (1/9) of the eighteen percent (18%)
shall be retained by the organization licensee to be distributed as follows:
 (1) seventy-five percent (75%) as purses for participating horses, and
 (2) twenty-five percent (25%) shall be remitted to the Commission, at such intervals as required by the Commission, for deposit in the Oklahoma Breeding Development Fund Special Account.
Id. § 205.6(B)(2) (emphasis added).
¶ 36 In the third category, wagers over One Hundred Fifty Million Dollars ($150,000,000), an even greater amount is required to be paid into the Oklahoma Breeding Development Fund Special Account:
 d. Two-ninths (2/9) of the eighteen percent (18%) shall be retained by the organization licensee to be distributed as follows:
 (1) seventy-five percent (75%) as purses for participating horses, and
 (2) twenty-five percent (25%) shall be remitted to the Commission, at such intervals as required by the Commission, for deposit in the Oklahoma Breeding Development Fund Special Account.
Id. § 205.6(B)(3) (emphasis added).
¶ 37 In sum, with respect to wagers made each calendar year in excess of One Hundred Million Dollars ($100,000,000), Section 205.6, in establishing how funds from the general eighteen percent (18%) retainage are to be distributed, requires that part of the eighteen percent (18%) retained be remitted to the Commission for deposit in the Oklahoma Breeding Development Fund Special Account.
¶ 38 These provisions, dealing with the general eighteen percent (18%) retainage and its distribution, do not, however, apply to fair associations granted licenses under the provisions of Section 208.2, because that statute is a more specific statute which dictates how the general eighteen percent (18%) retainage from wagers at fair associations' race meetings are to be distributed. The more specific fair associations statute controls because under long-standing rules of construction, "where there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes different rules and procedures from those in a general statute, the special statute and not the general statute applies." Southwestern BellTel. Co. v. Oklahoma County Excise Bd., 618 P.2d 915, 919
(Okla. 1980). Under the specific fair associations provision, none of the eighteen percent (18%) general retainage is required to be deposited into the Oklahoma Breeding Development Fund Special Account.
 C. Payments to the Oklahoma Breeding Development Fund Special Account From Multiple Wagers Apply to Fair Associations Except For Daily Double, Quinella, Exacta and Pick Six Wagers Excepted During Fair Association Race Meetings
¶ 39 In addition to providing for the distribution of funds from the general eighteen percent (18%) retainage, Section 205.6 at subsections D and E establishes additional retainage to be made in the case of multiple wagers. At subsection D, organizational licensees are required to retain an additional amount equal to two percent (2%) of all monies wagered on multiple races involving not more than three races and on multiple horse wagers. A portion of that additional two percent (2%) is to be paid into the Oklahoma Breeding Development Fund Special Account:
 D. In addition to the amount required to be retained by the provisions of subsection B of this section, each organization licensee holding a race meeting at which the pari-mutuel system of wagering is conducted shall retain an additional amount equal to two percent (2%) of all money wagered on multiple race wagers involving not to exceed three races and on multiple horse wagers in the same race.
 Such amount shall be retained by the organization licensee to be distributed as follows:
 1. Seventy-five percent (75%) as purses for participating horses; and
 2. Twenty-five percent (25%) shall be remitted to the Commission, at such intervals or [sic] required by the Commission, for deposit in the Oklahoma Breeding Development Fund Special Account.
Id. § 205.6 (D) (emphasis added) (footnote omitted).
¶ 40 Subsection E of Section 205.6 establishes a higher retainage amount in the case of multiple race wagers involving more than three races. Again, a portion of this additional retainage is to be paid into the Oklahoma Breeding Development Fund Special Account:
 E. Each organization licensee shall retain an amount equal to twenty-five percent (25%) of all money wagered on multiple race wagers involving more than three races, to be distributed as follows:
. . . .
 4. One-fifth (1/5) of the twenty-five percent (25%)
shall be retained by the organization licensee to be distributed as follows:
 a. Seventy-five percent (75%) as purses for participating horses; and
 b. Twenty-five percent (25%) shall be remitted to the Commission, at such intervals as required by the Commission, for deposit in the Oklahoma Breeding Development Fund Special Account.
Id. (emphasis added).
¶ 41 Again, with respect to multiple wagers, the more specific provisions of Section 208.2 dealing with licenses granted fair associations control. However, while the more specific provisions of Section 208.2 deal with some multiple wagers, they do not deal with all multiple wagers. Under the more specific provisions of Section 208.2, fair associations have no obligation to retain funds that are to be remitted to the Oklahoma Breeding Development Fund Special Account on daily double, quinella, exacta and pick six wagers. With respect to other multiple wagers which are not specifically addressed in that section, fair associations have the same obligations as all licensees under subsections D and E of Section 205.6 to retain funds which are to be remitted to the Oklahoma Breeding Development Fund Special Account.
¶ 42 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Fair associations granted an organization license under the provisions of 3A O.S. Supp. 1999, § 208.2[3A-208.2] of the Oklahoma Horse Racing Act may accept any multiple wagers approved by the Commission, including Trifecta, Pick 3, Superfecta and Twin Trifecta wagers.
 2. The tax exemptions afforded fair associations granted an organization license under the provisions of 3A O.S. Supp. 1999, § 208.2[3A-208.2] include monies received during their race meetings on all win, place and show wagers, daily double, quinella, exacta and pick six wagers, but do not extend to other multiple wagers, such as Trifecta, Pick 3, Superfecta and Twin Trifecta wagers.
 3. Fair associations granted an organization license under the provisions of 3A O.S. Supp. 1999, § 208.2[3A-208.2] are obligated under the provisions of 3A O.S. § 205.6(B)(2), (3) to remit a portion of the eighteen percent (18%) general retainage to the Oklahoma Horse Racing Commission for deposit in the Oklahoma Breeding Development Fund Special Account, except on win, place, show, daily double, quinella, exacta and pick six wagers accepted during their race meetings.
 4. Fair associations granted an organization license under the provisions of 3A O.S. Supp. 1999, § 208.2[3A-208.2], and under the provisions of 3A O.S. Supp. 1999, § 205.6(D), (E) are required to remit for deposit in the Oklahoma Breeding Development Fund Special Account portions of the additional funds retained on all multiple wagers other than daily double, quinella, exacta and pick six wagers accepted during their race meetings.
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL